```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

MICHAEL BANKS,

                    Plaintiff,           MEMORANDUM & ORDER
                                            20-CV-3867(EK)
          -against-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Michael Banks challenges the Social Security Administration's denial of his claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Plaintiff's cross-motion.

### I. Background

**A. Procedural Background**

        In August 2018, Banks applied for SSI benefits, alleging a disability onset date of September 2, 2003. Administrative Tr. ("Tr.") 10, ECF No. 11. Banks's claim, which the agency denied, was predicated on his assertion that he could not work because of certain physical and mental conditions. *Id.* at 10, 180. On July 30, 2019, administrative law judge ("ALJ") Melissa Warner held a hearing, *id.* at 33-57; she later concluded

that Banks was not disabled and therefore not entitled to disability benefits.  *Id.* at 10-22.  The Appeals Council denied Banks's request for review of the ALJ's decision, rendering it final.  *Id.* at 1-4.  Banks timely sought review of that decision in this Court.  ECF No. 1.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating SSI claims.  20 C.F.R. § 416.920.

First, the ALJ determines whether the claimant has engaged in substantial gainful activity at the time of application.  *Id.* § 416.920(a)(4)(i), (b); *see also id.* § 416.972.  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 416.920(a)(4)(ii), (c).  If the ALJ identifies a severe impairment, then at step three, she must determine whether it "meets or equals" one of the impairments

listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Here, ALJ Warner determined that Banks had not engaged in substantial gainful activity since August 20, 2018, the application date. Tr. 12. The ALJ also determined that Banks suffered from the following "severe impairments": post-traumatic stress disorder and a history of right hand tendinosis. *Id.* However, ALJ Warner determined that neither of these severe impairments rose to the level of a Listed Impairment. *Id.* at 14-15.

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R. § 416.920(e). The ALJ concluded here that Banks had the RFC to perform "light work" with limitations. Tr. 16. Those limitations included that Plaintiff could "understand, carry out and remember simple instructions where the work is not fast paced[;] . . . make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and

3

expected changes; and respond appropriately to supervision but not with the general public, and occasional contact with coworkers where there is no working in team or tandem with coworkers[,]" among other limitations. *Id.*

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv), (f). Here, the ALJ found that Banks had no past relevant work. Tr. 21. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v), (g). The ALJ determined that Banks could perform such jobs, including as a mail clerk, laundry worker, and apparel stock checker. Tr. 22. Given that conclusion, the ALJ concluded that Banks was not disabled. *Id.*

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[1]

4

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## II. Discussion

Plaintiff's objections to the ALJ's decision are not particularly well-developed. *See generally* Pl. Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Pl. Mem.") 1–8, ECF No. 21. Despite have been filed by counsel, his memorandum of law runs eight pages and largely recites, in boilerplate fashion, the general (sometimes outdated) standards an ALJ applies in reviewing benefits claims. Nevertheless, the Court considers Banks's two main, if unadorned, arguments on appeal: first, the ALJ erred by discounting the Plaintiff's complaints of impairment-related functional limitations, and second, the ALJ failed to properly weigh, and explain her assessment of, the medical opinion evidence. A full review of the ALJ's decision and the record makes clear that the ALJ applied the appropriate

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

legal standards and her conclusion that Banks was not disabled is supported by substantial evidence.

**A.   Banks's Subjective Complaints**

Plaintiff contends generally that the "ALJ discounted the Plaintiff's sworn descriptions of impairment-related functional limitations he experienced and continued to experience because of his impairments" when assessing Banks's RFC. *Id.* at 3. Among other things, Banks testified that he had difficulty working around strangers and in small settings; struggled with anxiety and depression; and experienced pain in his hands, as well as in his legs when standing all day. Tr. 41-49; *see id.* at 16. His brief goes on to say, again without much in the way of specifics, that the ALJ "failed, to provide the required detailed analysis utilizing all the criteria in Social Security Regulation 20 CFR §404.1529 with respect to all of the Plaintiff's symptomatology." Pl. Mem. 7. This claim is without merit.

Section 404.1529(a) instructs ALJs to "consider all [of a claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see also Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) ("The ALJ must consider statements the claimant or others make about her impairment(s),

6

her restrictions, [and] her daily activities . . . ."). An ALJ is required to "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms," and "evaluate whether the statements are consistent with objective medical evidence and the other evidence." *SSR 16-3P*, 2017 WL 5180304, at *6 (S.S.A. Oct. 25, 2017). Such evaluation requires a two-step process. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). If so, the ALJ must then consider "the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.*

The ALJ's assessment of an individual's "subjective complaints" regarding her pain and other symptoms is entitled to substantial deference by a reviewing court. *Rivera v. Berryhill*, No. 17-CV-991, 2018 WL 4328203, at *10 (S.D.N.Y. Sept. 11, 2018). The Second Circuit has cautioned against "second-guess[ing]" the ALJ's decision to discount a claimant's statements about his symptoms "where the ALJ identified specific record-based reasons for his ruling." *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010).

Here, contrary to Plaintiff's claims, the ALJ did consider Plaintiff's subjective complaints and testimony, in

addition to the objective medical evidence.  Indeed, the ALJ appropriately discounted Plaintiff's self-reported disabling symptoms — including, for example, his fear of strangers, mental health conditions, and hand pain — by considering those complaints together with the record as a whole. *See* 20 C.F.R. § 416.929 (an ALJ is required to consider plaintiff's reports of pain and functional limitations); *see also Genier*, 606 F.3d at 49 (observing that an ALJ is "not required to accept the claimant's subjective complaints without question" and "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.").

ALJ Warner concluded that Banks's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 17.  But, the ALJ went on, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." *Id.*  That determination was supported by substantial evidence.  For example, the ALJ acknowledged Banks's report during the consultative examination that he hears voices in his head. *Id.* at 20.  That was inconsistent, the ALJ noted, with his repeated denials of hearing voices during his treatment with Dr. Lynda Smith-Harris.  *Id.* at 18, 20; *see also id.* at 227,

240, 318 (denying hearing voices).  Referring to an SSA "Function Report" form that the Plaintiff filled out in August 2018, *id.* at 157–78, the ALJ considered it significant that Banks attended group programs, could prepare meals and do household chores, performed yardwork, and played the guitar, among things.  *Id.* at 17, 20.  The ALJ also noted that Plaintiff responded well to medications and that his symptoms improved when he took his medication.  *Id.* at 20; see *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (ALJ properly considered that the claimant's medical condition had improved with treatment).  As for Banks's physical limitations, the ALJ credited his complaints of pain since the 2018 internal medicine consultative examination showed a reduction in upper extremity strength to "3/5 distally," a "reduced pincer grip of 3/5," and "finger contractures."  Tr. 20.

   Ultimately, the ALJ took Plaintiff's reported symptoms into account when crafting a very narrow RFC.  That RFC assessment set restrictions on Banks's ability to work that reflected mental and physical limitations.  Banks was limited to light work that limited his exposure to the public and coworkers, was "repetitive from day to day", and was "not fast paced," in addition to "no crawling or climbing" and "no exposure to obvious hazards."  *Id.* at 16.  This reflects the

9

ALJ's consideration of Plaintiff's testimony and its consistency with other record evidence.

**B.   The ALJ's Assessment of the Opinions in the Record as to Banks's Limitations**

Plaintiff also contends that the ALJ "rejected, without full and careful inquiry and explanation," the "[t]reating/examining assessments."  Pl. Mem. 5.  He does so, however, without identifying whose assessments specifically the ALJ improperly rejected.  Banks further asserts that the "ALJ did not provide, pursuant to Social Security Regulation 20 CFR §404.1527(d), a detailed and reasoned rationale spelling out the reasons for the weight assigned to each treating and examining report."  *Id.* at 6-7.  A review of the record shows, however, that the ALJ fully considered the medical assessments of the agency physicians, treating physicians, and consultative examiners.

Section 404.1527 is the SSA regulation that sets out how the agency will evaluate opinion evidence for claims filed before March 27, 2017.  That provision contained the "treating physician rule," which SSA repealed prior to Banks's application for benefits.[2]  The operative regulation for Banks's claim is 20

---

[2] As noted above, Plaintiff filed his application with the SSA in August 2018.  The treating physician rule was repealed effective March 27, 2017, and replaced by new regulations set forth in 20 C.F.R §§ 404.1520c and 416.920c. *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021).

10

C.F.R. § 404.1520c. Under the revised regulations applicable here, the Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R & R adopted sub nom. Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). Instead, the SSA commits itself more generally to "articulate in our determination or decision how persuasive we find all of the medical opinions" in the case record. 20 C.F.R. § 404.1520c(b).

The new regulations require an ALJ to evaluate medical opinions and findings based on factors including, among others: (1) supportability (the extent to which a source explains his or her opinion and supports it with objective medical evidence); (2) consistency (the extent to which it is consistent with other evidence — medical and nonmedical — in the record), (3) the source's relationship with the claimant (including the length of the relationship and frequency of visits), and (4) the source's specialization (based on his or her education and training). 20 C.F.R. § 404.1520c(c).

The first two factors above — supportability and consistency — are the "most important factors," *see id.* § 404.1520c(b)(2); accordingly, the ALJ is required to explain her consideration of them. *Id.* The regulation does not explicitly require the ALJ to explain her consideration of the

11

remaining factors. *Id.* These are not especially formalistic requirements.[3] In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision," so long as she has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Here, ALJ Warner based her RFC determination of light work with limitations on a comprehensive review of the record evidence as a whole, including the opinions of the treating physicians and consultative examiners. Tr. 16-21.

The ALJ relied in part on the state agency physicians' opinions. *Id.* at 21. Dr. R. Dickerson provided a November 2018 RFC assessment based on the record medical evidence, and concluded that Banks could perform light work with additional limitations. *Id.* at 66-68. That opinion, the ALJ concluded, was "consistent with" the medical evidence. *Id.* at 21. In addition, the ALJ concluded that state agency psychological consultant Dr. M. Juriga's November 2018 opinion that Bank retained the capacity to meet the demands of unskilled work was

---

[3] Even when the treating physician rule applied, an ALJ was still free to discount a treating physician's opinion in appropriate circumstances, as long as he provided "good reasons" for doing so. *E.g.*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

12

"largely consistent with" the medical evidence. *Id.* Dr. Juriga further opined that Plaintiff could respond appropriately to supervision and manage changes in a routine work setting, which the ALJ credited. *Id.* at 68-70. Still, the ALJ assessed further limitations in the RFC based on other record evidence, including that Plaintiff would be limited to only "occasional contact with coworkers." *Id.* at 16; *see also id.* at 21.

The ALJ properly rejected treating physician Dr. Smith-Harris's opinion that Plaintiff was unable to work, a decision that is an ultimate legal issue "reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ also concluded that Dr. Smith-Harris's observations that Banks had "marked" limitations in interacting with supervisors and "extreme" limitations in interacting with the public and co-workers, *see* Tr. 335, were not supported by her own treatment notes or the medical evidence in the record. *See id.* at 21. Records showed, the AJ observed, that Banks's symptoms improved with medication. *Id.* The ALJ also relied on record evidence that Plaintiff lived independently and had a wide range of daily activities, including that he could prepare meals, perform household chores, shop in stores, and use public transportation.

13

*Id.* at 21, 159–61; *see also Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (affirming ALJ's conclusion where it was "consistent with the claimant's own account of his participation in a range of daily activities").

In addition, the ALJ concluded that Family Nurse Practitioner Rosa Narvaez's May 2019 letter was neither supported nor consistent with record evidence. Tr. 21; *see id.* at 357. The ALJ was correct to discount that letter for two other reasons: it was a letter submitted in support of Banks's attempts to secure housing, and nurse practitioners are not an acceptable medical source as used in SSA regulations. See *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (concluding that opinions of physician's assistant and nurse practitioner "do not demand the same deference as those of a treating physician"); *Wider v. Colvin*, 245 F. Supp. 3d 381, 388 (E.D.N.Y. 2017) ("[T]he statutes and case law are clear that nurse practitioners cannot issue medical opinions.").

The ALJ also considered the RFC opinions of two consultative examiners, Dr. Allen Meisel and Dr. John Miller. Dr. Meisel's October 2018 opinion concerned Banks's physical limitations. *Id.* at 299–303. Dr. Meisel concluded that Banks should avoid operating a vehicle or heavy machinery, among other things. *Id.* The ALJ concluded that Meisel's opinion was "not fully supported by examination findings" and "not generally

14

consistent with" the medical evidence in the record. *Id.* at 20. Dr. Miller conducted a consultative psychiatric evaluation the same month. *Id.* at 306-10. He diagnosed Banks with PTSD in partial remission and substance abuse disorders in remission. *Id.* at 309. As for Plaintiff's RFC, Dr. Miller offered his view that Banks had "no limitation in his ability to understand, remember, or apply" complex or simple directions and instructions. *Id.* The ALJ concluded that this aspect of Dr. Miller's opinion was supported by his examination and was consistent with the medical evidence in the record. *Id.* at 20. The ALJ did not credit, however, Dr. Miller's opinion that Banks was moderately limited in his "ability to interact adequately with supervisors, coworkers, and the public[;] sustain concentration and perform a task at a consistent pace[;] and regulate emotions, control behavior, and maintain wellbeing." *Id*. at 19-20; *see id.* at 309. Still, the ALJ's RFC assessment accounted for those limitations, as she limited Banks to light work that was "simple" and would not require him to interact much with the public or coworkers. *Id.* at 16.

"Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision . . . the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole."

15

*Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018).  Having properly applied the regulations in assessing the medical sources opinions and reviewed the record as a whole, the ALJ reached an RFC that was supported by substantial evidence.

In sum, the ALJ properly considered the various opinions in the record as to Banks's limitations and resolved any conflicts in the medical evidence.  In recognition of Plaintiff's serious but manageable impairments, the ALJ limited his RFC to light work with limitations.  This assessment reflects a careful balancing of Plaintiff's abilities and limitations and is supported by substantial evidence.

### IV.   Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies Banks's motion.  The Clerk of Court is respectfully requested to enter the judgment and close the case.

SO ORDERED.

                                                       /s/ Eric Komitee
                                                      ERIC KOMITEE
                                                      United States District Judge

Dated:     September 5, 2023
             Brooklyn, New York